# NO. 12-22-00183-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 420TH* |
| *D.A. AND G.A.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

C.P. and M.A. appeal the termination of their parental rights. They each present six issues on appeal. We affirm.

## BACKGROUND

C.P. is the father and M.A. is the mother of D.A. and G.A. On June 19, 2020, the Department of Family and Protective Services (the Department) filed an original petition for protection of D.A. and G.A., for conservatorship, and for termination of C.P.'s and M.A.'s parental rights. The Department was appointed temporary managing conservator of the children.

Following a bench trial, the trial court entered an agreed final order in a suit affecting the parent-child relationship (the Agreed Order) in January 2021. The Agreed Order appointed the Department as permanent managing conservator of the children and M.A. and C.P. were appointed possessory conservators. The Agreed Order also provided that M.A.'s and C.P.'s access would be at the Department's discretion.

On February 14, 2022, the Department filed a petition to modify the Agreed Order, alleging that the circumstances of the children, parent, sole managing conservator, possessory conservator, or other party affected by the Agreed Order have materially and substantially changed. The Department requested termination of M.A.'s and C.P.'s parental rights.

At the conclusion of a trial on the merits, the trial court found, by clear and convincing evidence C.P. engaged in one or more of the acts or omissions necessary to support termination

1

of his parental rights under subsections (D), (E), (N) and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between C.P. and the children is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between C.P. and the children be terminated.

The trial court also found, by clear and convincing evidence M.A. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), (N) and (O) of Texas Family Code Section 161.001(b)(1). The trial court found that termination of the parent-child relationship between M.A. and the children is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between M.A. and the children be terminated.

This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.).

Section 161.001 of the Family Code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West 2022); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.—El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911

S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

## SCOPE OF REVIEW

In their first issue, M.A. and C.P. urge that the evidence is insufficient to show a material change in circumstances. They do not request any specific relief under this issue or analyze the evidence under any particular standard of review. Accordingly, it is unclear whether M.A.'s and C.P.'s first issue directly attacks the final order or is intended to affect the scope of review of

3

their other sufficiency points. *See In re D.N.*, 405 S.W.3d 863, 870 (Tex. App.—Amarillo 2013, no pet.) ("[T]o rely on acts or omissions evidence of which has been presented to the trial court prior to the earlier order denying termination, the Department must garner sufficient evidence of section 161.004's elements, including a material and substantial change of the parties' circumstances.").

We assume without deciding that the Department was required to prove a material and substantial change to rely on evidence of acts or omissions occurring before the trial court's prior order. *See id.* at 869–70. Because we ultimately consider evidence of acts and omissions occurring before the date of the trial court's prior order when evaluating the sufficiency of the evidence to prove the children's best interest and the predicate ground for termination, we will review the sufficiency of the evidence to support the trial court's finding of a material and substantial change in circumstances.

**Applicable Law**

When, as here, the Department seeks termination after a trial court's prior denial of termination, the trial court may terminate parental rights by following the familiar procedure under Section 161.001 of the Family Code, or the court may terminate parental rights under Section 161.004. *See In re A.L.H.*, 515 S.W.3d 60, 89 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Section 161.001 provides the typical avenue for termination, when a court may terminate based on findings that (1) the parent committed one or more acts specifically named in the Family Code as grounds for termination, and (2) termination is in the child's best interest. *See In re U.P.*, 105 S.W.3d 222, 229 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Section 161.004 provides an alternative method for termination following the rendition of an order that previously denied termination if (1) termination is in the child's best interest, (2) the new petition to terminate was filed after the date of the prior order denying termination; (3) the parent committed an act listed under Section 161.001 before the date of the prior order denying termination; and (4) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order have materially and substantially changed since the date of the order. TEX. FAM. CODE ANN. § 161.004(a) (West 2022). At a hearing under this section, "the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child." *Id.* § 161.004(b).

4

"[T]here are no definite guidelines as to what constitutes a 'material and substantial change in circumstances' to terminate parental rights under section 161.004." *In re A.L.H.*, 515 S.W.3d at 89. The Fourteenth Court of Appeals has determined that a material and substantial change existed when the parent was adjudicated guilty of a crime and sentenced to prison after the prior order, and when a parent failed to complete a family service plan by failing to visit the child and attend medical appointments. *See In re M.J.W.*, No. 14-16-00276-CV, 2016 WL 4206046, at *8 (Tex. App.—Houston [14th Dist.] Aug. 9, 2016, pet. denied) (mem. op.); *see also In re C.A.C.*, No. 14-12-00396-CV, 2012 WL 4465234, at *9 (Tex. App.—Houston [14th Dist.] Sept. 27, 2012, no pet.) (mem. op.).

**Analysis**

In this case, the Department requested termination under both Sections 161.001 and 161.004. The Department specifically alleged that the circumstances of the children materially and substantially changed since the prior order. And there is no evidence the Department abandoned any of its pleadings at trial. The Department clearly relied on actions that both predated and postdated the prior termination order. M.A. and C.P. seem to attack the lack of a specific finding that the circumstances changed. However, absent findings on these ultimate issues, we presume the trial court made all fact findings necessary to support the order of termination. *Smith v. Smith*, 22 S.W.3d 140, 149 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see In re N.R.T.*, 338 S.W.3d 667, 678 (Tex. App.—Amarillo 2011, no pet.).

The testimony at trial showed that, at the time of the Agreed Order, the Department intended to place the children with their maternal grandmother in South Dakota. However, after the entry of the Agreed Order, the grandmother contacted caseworker Macee Skillern and informed her that "she would not feel safe with [C.P.] being involved with the children if they were placed in her home." The grandmother did not feel like she could keep the children safe if C.P. knew where they were placed. The Department then attempted to contact C.P. and M.A. to set up visitation and a new service plan. However, according to Skillern, the parents were "very difficult to locate" and contact. Skillern testified that neither parent engaged with the new services or the Department. We conclude that these facts, which are undisputed, demonstrate a material and substantial change in the circumstances of the children, the Department, and the future placement of the children after the Agreed Order. M.A.'s and C.P.'s first issue is overruled.

In their second and third issues, M.A. and C.P. argue the evidence is legally and factually insufficient to terminate their parental rights pursuant to subsections (D) and (E) of Texas Family Code Section 161.001(b)(1).

**Applicable Law**

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection (D) addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775-76 (Tex. App.—Texarkana 2003, no pet.). The child's "environment" refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993, no pet.). Further, subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

The court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E). It is not necessary that the parent know for certain that the child is in an endangering environment; rather, awareness of the potential for danger and a disregard of the risk is enough to show endangering conduct. *Interest of J.H.*, No. 09-20-00056-CV, 2020 WL 4516860, at *10 (Tex. App.—Beaumont Aug. 6, 2020, no pet.) (mem. op.); *see Interest of E.S.*, No. 12-20-00282-CV, 2021 WL 2483788, at *3 (Tex. App.—Tyler June 17, 2021, pet. denied) (mem. op.). Finally, the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *In re N.K.*, 99 S.W.3d 295, 301 n.9 (Tex. App.—Texarkana 2003, no pet.); *In re M.D.S.*, 1 S.W.3d at 200.

"Endanger" means to expose to loss or injury or to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). It is not necessary that the conduct be directed at the child or that the

child actually suffers injury. ***Boyd***, 727 S.W.2d at 533; ***In re J.J.***, 911 S.W.2d at 440. When seeking termination under subsection (D), the Department must show that the child's living conditions pose a real threat of injury or harm. ***In re N.R.***, 101 S.W.3d at 776; ***Ybarra***, 869 S.W.2d at 577. Further, there must be a connection between the conditions and the resulting danger to the child's emotional or physical well-being. ***Ybarra***, 869 S.W.2d at 577-78. It is sufficient that the parent was aware of the potential for danger to the child in such environment and disregarded that risk. ***In re N.R.***, 101 S.W.3d at 776. In other words, conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. ***Interest of T.A.***, No. 12-20-00276-CV, 2021 WL 2182316 at *4 (Tex. App.—Tyler May 28, 2021, pet. denied) (mem. op.). We have previously concluded it is illogical to reason that inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, is not inherently a part of the "conditions and surroundings" of that place or home. ***In re B.R.***, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Subsection (D) is designed to protect a child from precisely such an environment. ***Id***.

Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. ***In re D.J.***, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); ***In re D.M.***, 58 S.W.3d at 811. Termination under subsection (E) must be based on more than a single act or omission. ***In re D.M.***, 58 S.W.3d at 812; ***In re D.T.***, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional well-being is required. ***In re D.M.***, 58 S.W.3d at 812; ***In re D.T.***, 34 S.W.3d at 634.

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. ***In re M.R.J.M.***, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); ***In re R.W.***, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Endangering conduct is not limited to actions directed towards the child. ***Boyd***, 727 S.W.2d at 533. It necessarily follows that the endangering conduct may include the parent's actions before the child's birth and while the parent had custody of older children. *See id*. (stating that although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury); *see also **In re M.N.G.**,*

147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (holding that courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). Further, the conduct may occur before the child's birth and both before and after the child has been removed by the Department. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

**Analysis**

M.A. and C.P. argue on appeal that the evidence is insufficient to support termination under both subsections (D) and (E). Specifically, they urge the evidence since the Agreed Order showed that the children were in a foster home and that the Department was the only entity allowed to make decisions about the children. Relying on their Section 161.004 argument, they do not contend the evidence is insufficient to show they committed actions prior to the Agreed Order.

Alice Wilson, a Department investigator, testified that the Department received a referral in June 2020 because M.A. had been hospitalized while in Galveston. The referral stated that M.A. "had been beaten for two days" by C.P. "because she had purchased the incorrect diapers." The referral also indicated M.A. admitted to using methamphetamine two days prior. Wilson testified that she was unable to find the children but was able to contact M.A. by phone. M.A. was staying at a shelter and asked Wilson for her help locating the children. M.A. and the children lived in South Dakota and were visiting family in Texas at the time. According to Wilson, M.A. had no memory of the events which led to her being found injured in a hotel stairwell. M.A. also claimed to have consumed "a great deal of alcohol" and could not recall how she sustained her injuries. When Wilson contacted C.P., he would not disclose the children's location. Wilson stated that the children were eventually located, with law enforcement's help, with their maternal aunt in Nacogdoches. Wilson testified that M.A. left the shelter with C.P. C.P. was arrested in Galveston in connection with the assault. Wilson stated that she attempted to work with M.A. to find a suitable placement for the children; however, M.A. was unable to provide a relative or fictive-kin placement. Wilson testified that she understood that the children witnessed the assault on M.A. because the family was together at the beach. And based on that information, she believed the children were endangered by the domestic violence between M.A. and C.P.

8

Skillern testified that, following the children's removal, M.A. and C.P. resided in Nacogdoches until they moved to the Dallas area in February 2021. According to Skillern, the couple was "transient" and did not have a permanent address until March. During the case, the Department completed a reunification assessment and requested a monitored return of the children to M.A. and C.P. The children were placed with M.A. and C.P. in October 2021. Skillern testified that M.A. was pregnant during the case and gave birth in late September or early October. The baby died shortly thereafter. According to Skillern, M.A. and C.P. caused the death by inappropriately co-sleeping with the baby, even though there was a crib or bassinet available in the apartment. D.A. and G.A. were removed from the monitored return after the baby's death and returned to foster care in November. Skillern testified that G.A. had cigarette burns on her legs, which were still healing one month after removal. She also testified that there was an active criminal investigation relating to the cigarette burns. In addition, D.A. had reverted to being "very shy and uncomfortable around males" following the second removal. D.A.'s fear of males had improved by the time of trial.

Based on the evidence, the trial court could have formed a firm belief or conviction that M.A. and C.P. engaged in domestic violence, caused the death of a child, and burned G.A. with a cigarette. Therefore, after reviewing the evidence in the light most favorable to the judgment, we hold that a reasonable factfinder could have formed a firm belief or conviction that M.A. and C.P. knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and that they engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Therefore, we hold that the evidence is legally and factually sufficient to support termination of C.P.'s and M.A.'s parental rights under subsections (D) and (E) of Texas Family Code Section 161.001(b). Accordingly, we overrule C.P.'s and M.A.'s second and third issues as to subsections (D) and (E) of Texas Family Code Section 161.001(b) and need not address their fourth and fifth issues regarding termination under subsections (N) and (O). *See* TEX. R. APP. P. 47.1.

In C.P.'s and M.A.'s sixth issue, they argue the evidence is legally and factually insufficient to support a finding that termination of their parental rights is in the children's best interest. In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. ***Holley v. Adams***, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned ***Holley*** factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2022). These include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (4) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (5) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (6) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (7) whether the child's family demonstrates adequate parenting skills; and (8) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id.* § 263.307(b)(1), (3), (6), (8), (10), (11), (12), (13).

The evidence need not prove all statutory or ***Holley*** factors in order to show that termination of parental rights is in a child's best interest. *See **Holley***, 544 S.W.2d at 372; ***In re J.I.T.P.***, 99 S.W.3d 841, 848 (Tex. App.–Houston [14th Dist.] 2003, no pet.). In other words, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. ***In re D.M.***, 58 S.W.3d at 814. Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest.

***In re M.R.J.M.***, 280 S.W.3d at 507. But the presence of scant evidence relevant to each factor will not support such a finding. ***Id***. Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See **In re C.H.***, 89 S.W.3d at 28-29. We apply the statutory and ***Holley*** factors below.

<u>Analysis</u>

At the time of trial, D.A. was four years old and G.A. was two years old. Although the Department made visits with the children available, M.A. and C.P. were both inconsistent with visitation. Skillern testified that they attended seven visits between the two of them over the seventeen months of the case. Both parents were offered more than ten visits after the failed monitored returned; however, C.P. attended one and M.A. attended two.

Skillern testified that the children are doing well in their current foster placement, where they have been since the failed monitored return. She further testified that the foster parents wish to adopt the children.

As discussed above, the evidence reflected that M.A. and C.P. engaged in domestic violence around the children and were unable to locate their children following M.A.'s hospitalization in Galveston. Under their supervision, G.A. suffered cigarette burns, which took more than one month to heal. And the couple was reportedly responsible for the death of another child. Following the failed monitored return, C.P. told Skillern that the children should have never been returned to them.

The evidence also showed that M.A. and C.P. completed some of their court-ordered services. However, they did not complete all of them. And they failed to engage with the Department near the end of the case.

After viewing the evidence in the light most favorable to the trial court's best interest finding and applying the statutory and ***Holley*** factors, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of M.A.'s and C.P.'s parental rights was in the best interest of the children. *See* Tex. Fam. Code Ann. § 161.001(b)(2); ***In re J.F.C.***, 96 S.W.3d at 266; *see also **In re W.S.M.***, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.) (overwhelming and undisputed evidence of endangerment sufficient to support best interest finding). Accordingly, we overrule C.P.'s and M.A.'s sixth issue regarding best interest.

11

## DISPOSITION

Having overruled M.A.'s and C.P.'s first, second, third, and sixth issues, we ***affirm*** the judgment of the trial court.

**GREG NEELEY**
Justice

Opinion delivered September 30, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 30, 2022**

**NO. 12-22-00183-CV**

**IN THE INTEREST OF D. A. AND G. A., CHILDREN**

Appeal from the 420th District Court
of Nacogdoches County, Texas (Tr.Ct.No. C2035984)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*